Department. Ms. Sheff? Yes, Your Honor. Good morning. Good morning. May it please the Court, my name is Darpana Sheff and I represent Plaintiff Gerardo Serrano. Federal officials cannot seize your vehicle for more than two years without any judicial process and then after you sue them, simply return it and say, no harm, no foul. There is harm to Gerardo and thousands of class members left roadside by CBP seizures of vehicles and there's constitutional foul, one requiring this Court to reinstate the class claims for due process violations as well as Gerardo's Bivens claims. First, I'll address the merits of the class-wide due process claims and next, I'll respond to the government's argument that this claim is now moot. Finally, I'll briefly address the Bivens claim and explain why qualified immunity does not apply. The complaint plausibly alleges that two government policies violate due process. First, it's the lack of a prompt hearing to contest the interim loss of a vehicle after seizure but before a court judgment on forfeiture and second, we're challenging the requirement of a bond simply in order to invoke the right to see a judge. As to the first, it is black letter law that due process requires a prompt hearing to contest even temporary deprivations of property. Applying the familiar Matthews versus Eldridge factors, most courts, two vehicles, most courts have ruled that due process requires an interim hearing after a vehicle seizure even in the context of civil forfeiture. So under the first Matthews factor, the private interest in the loss of a vehicle Before we get into the Matthews factor, I was confused. The district court emphasized in your reply brief reiterated that you're not challenging the absence of a hearing, the immediacy of one after the seizure. It seems like in the reply brief, and you italicized it, you said the problem is the retaining of it for two years. Yes, Your Honor. There's two problems. So why isn't the Supreme Court telling us to have the due process analysis be one of Barker and the sort of the speedy trial factors that you presumably would win pretty easily in this case? Yes, Your Honor. There's two separate violations. As to the class claim, the violation is a lack of a prompt hearing. It does not matter how long it takes to file a forfeiture complaint in that circumstance. As the court in Crimstock, the Second Circuit recognized in Crimstock in 1981, sorry, Crimstock is 2002. That's the Second Circuit. Yes. Yes, Your Honor. And so the court in the Second Circuit in Crimstock recognized that irrespective of how long a forfeiture complaint might might take to file, the violation is the loss of the interim, the interim loss of your vehicle in between seizure and the actual trial on the merits, which in Crimstock could last as long as months, even years. And here, it could last as pertaining to the class. Even the shortest time would be at least several months. The separate violation that just applies to Plaintiff Girardo is his individual Bivens claim, which I think Your Honor correctly recognizes is a clear violation of holding onto a car for two years without even referring the case to the United States Attorney's Office. But why are you, again, I may just not be following. Why are you not relying on Barker? And am I wrong that Von Neumann is pretty much saying the forfeiture hearing gives you sufficient due process provided you always have Barker there to contest something that's taking too long? So two, two responses. First, Von Neumann, as the District Court recognized, is in opposite to this case. Von Neumann involved a different circumstance, addressing a different issue in which the plaintiff filed specifically a petition for remission when the owner could separately challenge the forfeiture in a judicial proceeding. So the court in Von Neumann is not addressing the length of deprivation until you get to a court hearing. It was simply noting in that context that when you have an opportunity to challenge a vehicle seizure in court, the length of time, the delay by an executive branch agency is not going to give rise to a constitutional violation. But so what you really want is an opportunity to get in front of a neutral Article III adjudicator. That's correct, Your Honor. I think the Supreme Court— In that regard, why don't you have a sufficient safeguard in Rule 41, which neither party really mentions much, if at all. But Rule 41 of the criminal rule says if there's been an illegal seizure, you can move to the District Court to contest that, and you can get it back, and that happens all the time. Yes, Your Honor, but I think the difference with Rule 41G, as the court recognized in Crimstock, is that a simple three-month delay in being able to challenge a vehicle seizure through another procedure—here, 41G, in Crimstock it was Article 78—was insufficient because it's that three-month delay without a vehicle is a significant loss. But you can move immediately. You can, but there's no guarantee that that hearing would take place immediately. But that's getting you to an Article III judge, so now your complaint is that that judge is not moving the docket quickly enough. And the further reason, Your Honor, is that it's a challenge to the seizure, which is what Rule 41G would get you. It would not get you a challenge to the retention of the vehicle. So in a Crimstock-style hearing, what we're challenging is the probable validity of retaining the car during the pendency of the action. A Rule 41G motion would get you your car back permanently, and so the standards are different there. And I would submit— What's the best case that discusses why 41G isn't an adequate safeguard so that we don't want to create, constitutionalize a whole new one? Yes, Your Honor. I think it's both the Supreme Court in James Daniel Goode and the Crimstock decision from the Second Circuit. Turning to the second factors under Matthews, the CBP— Before you read 41G, let me ask you, why did your client wait two years to file that motion, and did it have anything to do with representation by the Institute for Justice? On the second point, no, Your Honor, Gerardo did not reach out to us by that point. But because Gerardo did not simply sit on his right, immediately after being released he asked the CBP agents what he should do. They turned him away. He immediately filed—within one month, filed a claim and a bond. He posted a significant 10 percent bond, so more than three— We know the facts. Right. I'm just asking you why he waited so long to file the motion. Well, I think as a layman, he probably didn't know that you need to file a 41G motion. Instead, he followed the procedures that CBP offered. He posted a bond, he called the CBP agents, was repeatedly told, oh, you can't do anything else to speed up your process. This is all you can do. And that's what he thought. And after two years, or after at least more than that time, he also filed a FOIA request asking what happened to him. Would it make a difference if the notice he got had said, you've got 41G, it'll get you right to a federal judge? I think that would have made some difference. I don't think a 41G hearing, though, is sufficient, because as I said earlier, the And we are not challenging that, you know, maybe in some of these class members, the car is entitled to be forfeited down the road. That doesn't mean they're not entitled to immediate return or prompt return of their vehicle during the pendency of that proceeding until a court eventually finds that the car should be forfeited. Let me ask you, we've been talking a lot about the vehicle. For Matthew's purposes in particular, is there a distinction in your argument between the handgun and the ammunition versus the truck? Yes, Your Honor, and as pertaining to the class, we are only seeking to represent a class of people whose vehicles have been seized. So the prompt hearing that we're asking is for when a person's vehicle has been seized. Turning briefly to the mootness, or if there are any concerns on mootness, I'd like to – oh, sorry, let me turn back to, sorry, the second policy at issue here. The bond requirement also violates due process. The bond challenged here is not simply a security to release the property. Instead, it is a bar to challenging the seizure at all, and this kind of pay-to-play to simply invoke your right to judicial review violates due process. If the statute already says without unnecessary delay, correct? If you see someone's property, the forfeiture hearings have to start without unnecessary delay. So the statute's already saying it should occur quickly. What more do you really want? You want essentially equivalently of an initial appearance? Yes, Your Honor. Similarly to in Gerstein and McLaughlin, where you have a prompt probable cause hearing when a person is detained, there should be a prompt probable cause hearing or prompt probable validity hearing when property is detained. Because again, it's not about the question of the ultimate title to the property. It's about does the government have a sufficient justification to continued retention of your vehicle. Maybe they had probable cause to seize. Maybe they didn't. Maybe during the intermediate time between seizure and an ultimate judgment on the merits, the government does not have a probable validity to hold on to the property because the whatever probable cause has evaporated by that point. And property owners deserve, under the Constitution, under due process, a prompt opportunity to challenge that. And this is not new, Your Honor. It doesn't exist in the rules as to people being arrested or in Statutes 3161 Speedy Trial Act. So it does suggest to me the rulemaking process in court and Congress can respond rather than us creating a Bivens revenue. Respectfully, no, Your Honor, because remember, this is a civil forfeiture action. So there is no necessity to be arrested or, and in fact, Gerardo here was not charged or arrested with anything. No, I know, but if you want the equivalent as to what happens for people in the context of property seized, it would be something that Congress or even the rulemaking, no? No, Your Honor, because again, in James Daniel Goode, it's a forfeiture case decided by the Supreme Court. The Supreme Court doesn't say, oh, well, that's okay, you can have your property seized without an interim hearing, without a hearing, because eventually there's a judgment on the merits. What the court says is that the interest in property is very high and the government must have sufficient reason to deprive you of the property until a final judgment order. And this is not new for vehicles. The court in, the Supreme Court in Snydeck noted that when there is a interim deprivation, there it was the freezing of wages, interim, before a final judgment on the merits, that required a due process hearing. And this is black letter law that goes back to 1969. Mr. Goode was pretty, pretty careful in his Matthews analysis. And I think first factor, your property interest for the car that he needs is strong. It's to me somewhat undeniable that the government interest interdicting smuggled items at the border is strong. So we are sort of trying to discuss that second factor. Yes, Your Honor. And I'm trying to get out, wouldn't it be an incredibly heavy burden for the government to impose what in my mind still sort of already exists under Rule 41G, even if he wasn't told about it? Respectfully, no, Your Honor, because again, I think that focuses on the ultimate title to the vehicle. And both... You're almost arguing against yourself. You're saying the government has reason to keep it because they might want to forfeit. But if Rule 41G can get your property back no matter what, they'll assess whether the claim is lawful or not. Your argument here is he didn't commit a crime at all, and that's proven by the fact he was never charged. Right, Your Honor. And that would entitle him to return of the vehicle promptly instead of having to wait, even if the forfeiture trial was held within three months or the 41G motion within three months. That's simply insufficient time. Is his letter the one that gave the money, the bond? Is that in the record? The letter itself? No, Your Honor. I think it's just the claim requirement with the bond requirement. I'd like to save the rest of my time for rebuttal. Well, you probably have only five rebuttals, but that's before your rebuttal. Oh, okay. Sorry. You get to keep going. Okay. Sure. I'm sure, Your Honor. I'll stop asking questions.  So, yeah, in the record, it is the claim that he filed along with the bond. But there was a letter in October that he wrote. Yes, Your Honor. I don't believe that's part of the record. And that's a key reason why this court should remand the case, because this is being decided on a motion to dismiss. I think it's premature to say that the process that's offered by the government is simply sufficient at this stage. I was just curious, I guess it's not in the record, but Judge Clement's questions were, what actually, when he did focus on this, what did he tell the government? He told the government... I want a judge. Yes, Your Honor. He did tell the court, and he wanted immediate return of his truck, and he wanted to get before a judge to argue why the truck should be returned and why it should be returned immediately. You indicated you were going to get to, and I know your time is limited, the qualified immunity issue. With regard to the defendant's invocation of qualified immunity, what cases do you rely on to show that the violation of the law, it was a clearly established law at the time of the defendant's conduct? I think this court's decision in U.S. v. $23,000 in currency from 1983 clearly establishes that a 13-month delay in filing a forfeiture complaint violates due process when there's no justification for that delay. No reasonable officer here would have believed it was okay to keep Gerardo's truck for two years without even referring the case to a U.S. attorney, as we allege in the complaint, and the record is 19 to 20 in the record. That is a Barker due process analysis, right? Yes, Your Honor, and that's why it applies to the Bivens claim. Separately, the class claim is not about the delay in filing, and the reason for that is pretty clear, because every individual class member will have different circumstances, but every class member suffers the harm of the interim loss of their vehicle in between seizure and any time it can get, but the soonest it can get before an Article III judge. And I'd like to emphasize that in Crimstock, the court found that even a three-week delay was sufficient to raise due process concerns, because that was the immediate time they required, if I may just finish the sentence, between seizure and when a complaint had to be filed within three weeks, and that was a due process concern. Okay, thank you. Thank you. May it please the Court, Charles Scarborough, Department of Justice for the Federal Defendants. The plaintiff in this case filed suit seeking three things. You're going to have to talk up a little bit. Sure. The return of property seized by CBP under Federal Rule of Criminal Procedure 41G, class-wide injunctive relief based on the failure to provide a prompt post-seizure hearing, and legal for failure to provide that prompt hearing. Taking those in reverse order, the district court properly dismissed the Bivens claim under Abbasi, because it is unquestionably a new type of claim, and many special factors counsel hesitation against extending Bivens to this new context. Second, the plaintiff's claim for return of property is clearly moot, because CBP returned the property, and the return of property also mooted both plaintiff's individual claim and his claim on behalf of a putative class for an additional hearing, prompt post-seizure hearing. Starting with the mootness point, under this Court's decision in Fontenot, and many other cases, the general rule is that a putative class action becomes moot when the claims of all the named plaintiffs have been satisfied and no class has been certified. In such circumstances, there's just not a concrete case or controversy to adjudicate claims. But are you arguing that simply because he waited as long as he did, and then when he filed the action in court, as I understand it, then the vehicle was returned? Is that a way of confecting mootness by the government? Well, confecting is a sort of loaded term, I think, that goes to sort of the idea of picking off, and the Supreme Court dealt with just that same type of argument in the Genesis Healthcare case in 2012. That was a collective action under the Fair Labor Standards Act. But as this Court said in Fontenot, the applicable mootness principles sort of are the same as between Rule 23 and the collective action context. In Fontenot, though, we reiterated the validity of the Zeidman case? That's correct. We reiterated it and cabined it, and I'm going to get to why I think it should continue to be cabined. It's hard. It is. You can use your time as you want. I'm not persuaded by the notion that you can seize the property and then wait two years and then choose not to prosecute him, give him back his property, and then say it's moot. So that's a difficult argument for me. Well, let me take a stab at it because, again, it's not just me. It's the Supreme Court was dealing with exactly the same argument in Genesis Healthcare. There was a collective action. They were asking for overtime wages, and there was a named plaintiff. He wanted to represent a class of people all seeking basically the same stuff. And the Supreme Court rejected the argument that applying mootness principles there would allow the defendants to pick off the named plaintiffs. And in doing that, the Supreme Court tried to locate the picking off doctrine within the sort of principles of mootness and said as to the inherently transitory exception that that exception did not apply because this doctrine focuses on, I'm quoting here, on the nature of the challenge conduct giving rise to the claim not on defendant's litigation strategy. So you have a pretty definitive rejection by the Supreme Court of this picking off doctrine. And I think this court in Fontenot recognized that to the extent Zeidman was predicated on the idea that when you pick off a claim, you provide full relief to the named plaintiff, and no class has been certified, that's an important predicate here, that the case doesn't remain alive at that point. Just getting to the constitutional question, so do you accept, well there are two ways that I've been looking at this. One is Matthews and one is Barker. And I'm not persuaded that you won't lose under Matthews that the district court wasn't in error when I look just at this customs form that people like Serrano are sent. Because the four options he's given are sort of admit you're wrong, fall on our mercy, second is give us some money for a compromise, the third is abandon the property, and then the fourth one that he had to check, the only other checkbox given to him was, well, refer it to the prosecutor. How do any of those guarantee you sort of adequate safeguard? The prosecutor is exactly who you don't want your vehicle referred to. Well, we're not writing on a blank slate here, and I would go back, there was no mention of the $8,850 currency case in the Supreme Court from 1983. That case was a case of unreasonable delay under the Barker versus Wingo factors, and the court there found that an 18-month delay under the circumstances of that case was actually not violative of due process. But the important point... What are the four factors for Barker? One is length of time, two years. Second is the interest of the individual, and this is his car, he's still paying notes on it, and he's buying a rental car instead to get to work? Your Honor... What's the third? What's the third factor? The third is the property owner's assertion of his rights in some circumstances, and again, what I'm trying to derive from the $8,850 currency case is not an application to this case to say that we win in this case. When it got to the stage where he went to court, we gave him his property back, and strongly suggest, I think, that he would have won an $8,850 delay case. What I'm trying to suggest is that in that case, the Supreme Court identified a variety of other mechanisms exist in the current scheme that protect this. I agree, but in your brief, am I wrong, you never mentioned Rule 41G. No, we do mention Rule 41G, and I'm positive of that, and the more important thing is that the Supreme Court has mentioned Rule 41G. The Supreme Court... Well, no, it's important what you argue. You're positive that you developed Rule 41G as a safeguard here? I am positive that we explained that the existing scheme is adequate. There are a number of remedies available. My question is, it seems like 41G is the answer, but I'll look at your table of contents again. I think when you look at it, you won't find... I may be wrong. If I am, I apologize, but so it's not just, oh, well, the Supreme Court has implicitly said it. I need to know whether the government's position is, in spite of the notice that these people get, 41G, which is not described to them, is in fact the way to go to get your property back. Well, what I would like to suggest is that 8,850 currency, the Supreme Court, Justice O'Connor writing there, identified three different things that she thought were safeguards. One is the Rule 41G. One is the ability to petition with the remission petition within the agency, and another is the ability to come to court and invoke the court's equity jurisdiction when something is taking... 41G is the equity jurisdiction. I'm not sure that's entirely right, Your Honor. I think the equity... And the court, in 8,850, I would urge the court to go back and read it. So the petition for remission is the first option that he didn't check, which is sort of show me some leniency. That's not a very attractive one to me, whether it may have been mentioned by the Supreme Court. The only one that, correct me if I'm wrong, the only one that gets him a neutral, non-executive branch reviewer is 41G. 41G, and again, the invoking the equity jurisdiction, I mean, you can say that those are collapsed. The Supreme Court lists them in the disjunctive in the... Why aren't either of them mentioned in the form these people get? If that's your principal argument to us now, they get the form. They're not with lawyers. They've lost their car, whatever else has been seized, and they get a form saying, here are your four options. All of them are come to the executive branch that may be prosecuting you for this munitions violation. But now you're in court saying, well, the real one is this equity 41G, which I don't even remember developed in your brief. I don't think we're trying to hide the ball, and in the Von Neumann case, the Supreme Court's decision there confirms very strongly that the forfeiture proceeding without more provides the hearing required by due process. And what it does show after the $8,850 currency case, which confirms that, look, if there is delay, if there is inordinate delay in instituting the forfeiture proceeding, you have these remedies. And the Supreme Court didn't say those remedies have to be spelled out. I agree that it would be better practice to spell those things out in the letter, but the Supreme Court didn't say that in the $8,850 case. Well, $8,850, what you're saying is once it delays too long, you may have a Sixth Amendment argument, but they won't know until they've called 40 times to the phone number and the little person at the bottom if that's going to be too long delay. So the one, one, the only option I'm coming back to that the government really is telling people to do is as soon as it's seized, you can file to get in court to challenge the And what's the best case? What's the best circuit case that describes that as where people like Mr. Serrano really should go? Can you think of any? I mean, there were, there are cases that adjudicate these Barker versus Wingo delay cases in this. Not Barker versus Wingo delay. I'm talking about right after it's been seized. Using 41G. Can you think of a district or circuit case that actually isn't? I think that the reason for that is, as the Supreme Court rejected, uh, noted in Von Neumann is that the vast majority of these cases are actually resolved in administratively. The Supreme Court has a foot in a footnote eight and Von Neumann says 90% of these cases are resolved administratively and that continues to be noticed. And the notice, the last line says, and by the way, anything you tell us is subject to prosecution for a thousand and one. So you're asking these people that are worried they might've committed a federal crime crossing the border to come back and describe to you exactly what they were doing, basing a possible thousand and one prosecution. I'm not sure that they would have to put themselves at jeopardy in order to invoke the administrative process. And again, the Supreme Court has blessed this process. The Supreme Court has said, this is the process that you get. And I'm describing these old vast Supreme Court cases that do describe the constitutional landscape. I'm asking you for any case, district or circuit, where a person is able to get their property back under this theory, 41G or equitable jurisdiction. Can you think of a single one? Not as I stand here right now, but again, that's a function of the fact that the system works administratively. It didn't work for Mr. Solano. It did not work in this circumstance, I agree. But the remedy that they are seeking, this is not, they've repeatedly disclaimed that this is an unreasonable delay case. What they want is an additional layer of procedure that in some respect is duplicative of what exists already administratively. And again, runs square into the proposition in Van Neumann that the Supreme Court said that the forfeiture proceeding without more provides the hearing required by due process. Specific to the facts of this case, though, is there any explanation? Do we know why there was the October 22nd letter, 2015, which I think is in the record, was the initial notification, I guess, from the government, notice of seizure. And then the filing of the complaint occurs on September 6th of 2017. Do we know specifically why it took that long in this case? We do not, Your Honor. And again, part of that is because this is not, it was not stated as an unreasonable delay case and it was not litigated as such. And when it came to different decision makers, the property was promptly returned. And that can be viewed as a picking off mechanism. It can also be viewed as providing complete relief and recognizing we held onto this for too long. I would commend to the Court Judge Sutton's dissenting opinion in Wilson v. Gordon in the Sixth Circuit, where he talks about the picking off exception. He talks about how picking off has sort of been used as a pejorative label to suggest nefarious motives by the government. It's also a way of basically providing complete relief. That's a good thing. The federal rules actually encourage that through Rule 68, offers of judgment. Is there a fund where he can be reimbursed for the rental car costs and his car note? No, there's not, Your Honor. So that doesn't sound like really making him whole. Well, that's true and that's true of any unreasonable delay case, even in sort of the APA context, you know, 706-1, unreasonable delay, there are often, you know, injuries, real injuries to real people in these cases and I do not mean to minimize those injuries. So what's the sanction if the government does, we don't really know the statistics, let's assume there's a huge backlog and people's cars are being kept for years. Well the absence of any cases like that suggests something. Again, I don't, I'm not in a position to argue statistics. We're not at that stage of this case. What the plaintiff, though, is asking for is to look at this existing scheme, the current procedures and deem them to be constitutionally inadequate on their face and that is not something that we think, Von Neumann. I think they do look constitutionally inadequate if the choices are the four that just get them right back to the executive branch that may be prosecuting him. But the fifth one, which you emphatically say is there, I don't remember being in your brief at all, is the availability of federal court review through 41G and equitable jurisdiction. But you can't show and point me to a single district or circuit court case where that's been used. It seems to me it is available, but I'm just a little bit lost as to why the notice doesn't give that option if that's the favor immediate available one rather than waiting and filing a barker. You think things are being gotten back to most people, they just weren't for Mr. Serrano? I think that there was an inordinate delay here and that's why when it came to different eyes on the case, the property was given back. Why did it take two years? Again, I'm not in a position to, I don't know and I would be speculating. It's a major issue in this case. It's not an issue in this case in the sense that the property has been given back and the case was not brought as a delay case under Barker v. Wingo. This case was brought as a facial challenge to the processes that are currently in place. I guess I'm just thinking, let's think about what's real advice. I own one car. It's in Malibu. I go down to the border. They seize my car. Then I get in the mail this notice that says, you know, you may have committed a munitions violation. You had ammunition in the car and so we're looking at it. And then I call repeatedly, say, I have no car to get to work. And the answer is, well, you can either just pay us a compromise offer, you can tell us you want to abandon your car, you can ask for leniency, or you can tell us to refer it to the prosecutor. Let me push back a little bit on the ask for leniency part. I mean, that's the remission petition. That's the way that 99% of these cases are resolved. And the statutory term... But I've got to then explain my circumstance to you. And yet at the bottom of the notice it says anything you say can be used against you, any false statement, 1001 prosecution. Why am I dealing with the possible prosecutor and law enforcement agency that has stopped me and seized my stuff? I want to get to a neutral arbitrator. Well, then you can check that box, the fourth box. That's telling you the prosecutor. That says I want the case to be referred to a forfeiture hearing. And that's the... Slow down. It doesn't say to a forfeiture hearing. I want the case referred to the prosecutor. That's what you're telling American citizens they've got to do? That's precisely... Hurry up and prosecute me? That's precisely what the Supreme Court blessed in both 8,850 and said that, look, if that goes too slowly, you may have a claim for violation of due process if the referral takes too long. And again, 8,850 applied Barker v. Wingo, applied those multi-factors, case-specific analysis and said 18 months in that case wasn't too long. So it's not a categorical approach that can be taken to these cases. They're multi-factor inquiry. It's not something that can be aggregated on a class-wide basis either because they're case-specific reasons for each of the delays. And as to the... Is that the O'Connor... Is that... Remind me. 8,850 is the O'Connor opinion in 1986. And then in Von Neumann. Did Von Neumann reiterate 41G as an option? I believe so, Your Honor. I think it's available. It certainly is available. But Von Neumann, what is very clear is if Von Neumann says implicit in the 8,850 analysis is that the forfeiture proceeding without more provides all the process that was due in that case, in Von Neumann, the question was, my remission petition, my petition to go too long. That was the claim in that case. And the Supreme Court said, you are not constitutionally entitled to anything from the agency. And said what you get is the forfeiture proceeding at the end of the day. That's because it's looking at the forfeiture laws that say some version of without unnecessarily delay. That's 5.1. Whatever. You know the language. It's forthwith or whatever. That's right. So the Supreme Court's assuming the government's giving the relief the statute requires them to give. No, it's assuming that there is a remedy if the government doesn't act quickly. It's just because, again, that's what 8,850 was all about, is that if the government is dragging its heels. The remedy is a due process 1983 suit saying it's taken too long. No, it's not. That's not in any way. No, not in a 1983 suit. It was an action to say that there is a due process violation here and that you're holding on to my, you're not initiating the forfeiture proceeding quickly enough. It's an equitable action, Rule 41G. Any one of these ways to come in and say you have not started the forfeiture proceeding fast enough. Okay. If I could turn just very quickly to the Bivens component of the case, I think it's very clear. I think in some respects this is the easiest part of the case, that under the Supreme Court's decision in Ziegler v. Abbasi, which is the end of a long line of explaining that Bivens is a disfavored remedy, that this is a new context. It's in the forfeiture context. There is a comprehensive scheme that governs these proceedings. In the Bivens context, it is well established that purported inadequacies in the scheme don't mean that you spring into action and imply a Bivens remedy. That's for Congress to do. The new approach to Bivens is grounded in separation of powers concerns, concerns that Congress should be the one acting here. I would note that Congress is very attuned to forfeiture practices and potential forfeiture abuses. There was comprehensive forfeiture reform in the Civil Asset Forfeiture Reform Act of 2000. This scheme was specifically exempted in 18 U.S.C. 983i from the deadlines generally imposed in CAFRA. That's a very strong indication that Congress didn't intend to impose anything approaching a Bivens remedy here. If there are no further questions, I'm happy to sit down. Counsel, let me ask you one question about the application of the Matthews factors. Sure. In this case, those are rooted in resolution of factual disputes. Is that correct? I think that that's a difficult question. You would think that would be the case, but for instance, in Crimstock, that was decided on a motion to dismiss. Then Judge Sotomayor just applied it in reversing the motion to dismiss that was granted at the district court level. There is a factual flavor to the balancing of those factors, the risk of erroneous deprivation, the government's interest, but courts have tended to do this on the papers. I agree with your intuition, though, that this seems like a fact-based thing. We think we win under the Matthews factors as to this additional layer of process, but we think that Von Neumann actually forecloses it even more directly by saying that what you get is the forfeiture proceeding, and if the forfeiture proceeding is delayed, what you get is the 8,850 Barker v. Wingo test. I see that I'm over time. Thank you, Your Honor. I may remind counsel that if you bring your cell phone into the court, it is supposed to be off. There's a big sign outside that warns you of that, so please turn your phone off. To address the point Your Honor was making, first, the remedy for a violation of a delay in filing forfeiture is Bivens. That's it. Besides giving the car back, there is no other mechanism to redress the past harm of not having your car for two years or whatever the delay is, and that's our separate Bivens claim. Regarding the class claim for all class members, the separate violation of not holding a prompt post-deprivation hearing, an interim hearing, every single court to have addressed this issue in the specific context of civil forfeiture has found that first, the Matthews v. Eldredge test is what applies, not Barker v. Wingo. In fact, the Seventh Circuit in Smith v. Chicago reversed itself, saying that initially they applied Barker v. Wingo, and now that that was incorrect. I think what he's saying is, if we're looking at whether to constitutionalize a whole news hearing post-seizure hearing, we shouldn't, because here's the array of relief. One, the 41G equitable immediate filing. Two, you get the forfeiture hearing. But if that takes too long, you can come in 8,850 Barker-type due process, too long. Why doesn't that cover every possible injury? Because in all of the cases applying the Matthews factors to civil forfeiture of vehicles, every court has rejected 41G or any other equitable. That would help me a lot. What is the reason it's 41G? The district court of DC in Sims rejected 41G as an available remedy. Okay, well don't speed past that, because I don't remember reading that. I'm sure it was in the brief. But if the best case that says 41G isn't available is a district court, DC district court discipline in Sims, you can tell from my questions, that's going to be really important for me to read. Yes, Your Honor. So they said 41G is not available, why? Respectfully, if I could ask for supplemental briefing on this. No, no, I'll look at it. Okay, but it was not addressed in the briefing because that's not what the district court ruled on here. We focused the arguments on the district court's ruling and the district court's error. So the 41G aspect was not really raised in the briefing. No, I know, but you're very informed. You just said the case that has said 41G is not available in Sims. In your own words, why isn't it available? I believe that in that decision, the court relied on the fact that it thought that 41G was only applicable to criminal proceedings. Our circuit has said that's not true, correct? Bailey? I'm sorry? Our court. Do you agree or not? You're just not sure. I'm just not sure. Am I right that the government didn't brief 41G or is it in the brief? No, Your Honor. Neither of the parties briefed 41G as pertaining to this issue. The briefing on 41G was why Bivens is an adequate or is a necessary remedy because 41G or equitable remedies is not sufficient. Even the district court here did not think that, did not mention the 41G aspect that's being raised right now. And respectfully, Your Honor, even if this court believes that the current process of and the government's interest is not, do not tilt in favor of the government. And that's because the specific interest that's involved in the government is not just some generalized interest in seizing and forfeiting property or curbing crime. It's a specific interest in retaining the seized property before the order of forfeiture and a judgment on the merits. And here, the government has not shown any legitimate interest in why it needs to continue holding that property pending the outcome of a final. So the government's interest is that it absolutely has to interdict smuggled contraband at the borders. That's happening for thousands of people every day. Therefore they simply can't have the equivalent of Rule 5 hearings within 30 days or, you know. Yes, Your Honor. They can unquestionably seize the contraband. What they cannot unquestionably do is seize a vehicle that is not contraband and hold it for whatever period of time without any opportunity to contest. It's not necessary to retain this court's jurisdiction. It's not necessary to forestall future crimes. And most importantly, there are less restrictive means. The initial statute that they said was violated includes seizure of vehicles to move the contraband, no? Yes, Your Honor. But again, the interest that the government has is seizing the vehicle for that extended period of time. And it's simply a factual question. Respectfully, on all the cases that we're citing here, from Primstock down to the district court decisions, this is mostly decided, to the extent it's decided on the pleadings, it's in favor of finding a constitutional violation, that the plaintiffs state a constitutional violation under due process. It is, no court has ever said that, besides the district court here, that it is not a due process violation as a matter of law. Thank you, Your Honor. Thank you. We appreciate the arguments, and we will hear the next case, 19-10461.